UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

AURORA OIL & GAS CORPORATION,

        Debtor.

_____/

FRONTIER ENERGY, LLC,

        Plaintiff,

v.

AURORA ENERGY, LTD.,

        Defendant.

_____/

Case No. DT 09-08254
Chapter 11
Hon. Scott W. Dales

Consolidated Adversary Pro. No. 09-80518
LEAD CASE

**OPINION AND ORDER REGARDING APPLICABILITY OF
11 U.S.C. § 365 TO OIL AND GAS LEASES**

PRESENT:    HONORABLE SCOTT W. DALES
                   United States Bankruptcy Judge

Plaintiff Frontier Energy, LLC ("Frontier" or "Plaintiff") and Defendant Aurora Energy, Ltd. ("Aurora" or "Defendant")[1] are parties to two oil and gas leases referred to in this adversary proceeding as the Hudson Agreement and the Corwith Agreement (collectively the "Agreements"). Long before Aurora filed a voluntary petition for relief with this court, the parties were embroiled in litigation over their respective rights under the Agreements, principally those regarding royalty payments that Frontier claims Aurora owes. When Aurora filed for relief

---

[1] The Defendant is now known as NorthStar Energy LLC, but the court will continue to refer to the company as "Aurora" to reflect its prepetition identity.

in this court, the dispute became more complicated by the applicability of 11 U.S.C. § 365 ("Section 365"). The issue initially arose in connection with the confirmation hearing on Aurora's reorganization plan, but the parties agreed to resolve the controversy through this adversary proceeding. Frontier has since filed a motion for partial summary judgment to resolve issues related to the Agreements and Section 365 (the "Motion," DN 124). [2]

Frontier contends that the Agreements qualify as unexpired leases or, at least, executory contracts as a matter of Michigan law, within the purview of Section 365. Aurora, in contrast, argues that, as a matter of economic reality and Michigan law, the Agreements are neither leases nor executory contracts. Instead, each represents an executed sale of oil and gas, conveying an interest in the oil and gas and the real estate akin to a determinable fee.

Should the court determine that the Agreements are either unexpired leases or executory contracts, Aurora will have to assume or reject them. If Aurora elects to assume one or both of the Agreements, it will have to cure all defaults. If instead, Aurora rejects the Agreements, then Frontier's resulting claim will share a limited fund, *pro rata*, with other unsecured creditors.

There are no factual disputes affecting this issue, and the decision depends entirely on the court's legal analysis. If Michigan treats a lessee's interest in an oil and gas lease as an interest in real estate (rather than personalty), and if the lessee's interest is not a freehold interest, then the Agreements qualify as "leases" within the meaning of Section 365.

After carefully considering the parties' oral and written arguments, including the *amicus curiae* brief of Michigan's Department of Natural Resources and Environment, the court will grant Frontier's Motion.

---

[2] The parties conducted themselves during oral argument and in their briefs as if the Motion raises purely legal questions dependent entirely on Michigan's treatment of oil and gas leases. When the disputed issue is a purely legal one which the court may resolve without finding facts, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

ANALYSIS

In order to prevail on this Motion, Frontier must establish that the Agreements are either "unexpired leases" or "executory contracts" within the meaning of Section 365.[3]

1.    "Unexpired Lease" Analysis

The meaning of the term "lease" is a question of federal law, informed to a considerable extent by state law principles the court is bound to respect. *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471-72 (6th Cir. 1989).[4]

Though Section 365 does not give much guidance on the meaning of these key terms, it expressly provides that "leases of real property shall include any rental agreement to use real property." 11 U.S.C. § 365(m); *see also In re Gasoil, Inc.*, 59 B.R. 804, 807 (Bankr. N.D. Ohio 1986).

Michigan law plainly provides that the right to grant oil and gas leases originates with the holder of the land in fee simple. *Winters v. Mackie*, 135 N.W.2d 364 (Mich. 1965). Similarly, Michigan regards the rights conveyed under oil and gas leases as interests in real estate. *Jaenicke v. Davidson*, 287 N.W. 472, 474 (Mich. 1939). Although the ultimate object of the transaction between Aurora and Frontier is the extraction of oil and gas, an oil and gas lease does not grant an interest in the oil and gas *qua* personalty, only the right to extract it from the land. Indeed, only after the oil or gas is severed from the realty does it become personal property under Michigan law. *ANR Pipeline Co. v. 60 Acres of Land*, 418 F.Supp.2d 933, 940 (W.D. Mich.

---

[3] As Judge Hughes has explained, the terms "executory contract" and "unexpired lease" are "not interchangeable." *In re Sturgis Iron & Metal Co., Inc.*, 420 B.R. 716, 719 (Bankr. W.D. Mich. 2009).

[4] Although "[p]roperty interests are created and defined by state law," it does not follow that state law determines the meaning of an undefined term in a federal statute, such as the term "unexpired lease" in Section 365, because a "federal interest" may require a "different result." *Butner v. United States*, 440 U.S. 48, 55 (1979).

2006).  The Michigan Court of Appeals explained that the interest of an oil and gas lessee is regarded as a *profit á prendre*, an interest in the real estate, but not an interest in the oil and gas itself, at least not until the oil and gas are extracted.  *VanAlstine v. Swanson*, 417 N.W.2d 516, 520 (Mich. Ct. App. 1987) (*profit á prendre* "transfers no present interest in the minerals in place.").

The Michigan Supreme Court's opinion in *Energetics Ltd. v. Whitmill*, 497 N.W.2d 497 (Mich. 1993), is not to the contrary.  In this relatively recent pronouncement, the Supreme Court observed that an oil and gas lease "is a transfer of an interest in oil and gas," but for this proposition the court cited *Jaenicke*, a case that clearly characterized oil and gas rights as interests in real estate until extracted.  *Energetics*, *Ltd.*, 497 N.W.2d at 502 (*citing Jaenicke*); *Jaenicke*, 287 N.W. at 474 (oil and gas rights under oil and gas lease are "part of the realty until severed therefrom.").  The *Energetics* court explained the operation of oil and gas leases in Michigan:

> The typical lease grants the lessee the exclusive right to enter the land to explore, drill, and produce oil and gas.  1 Williams & Meyers, Oil & Gas, § 202.1, p 21.  The lessor retains a reversionary interest in the mineral estate.  See 3A Summers, Oil and Gas, § 601, p 310; Lampman, *Oil and Gas Royalty*, 42 Mich St B J 27 (March, 1963).  At termination of such a lease, the oil and gas rights revert to "the grantors of the lease, their heirs or assigns."  *Jupiter Oil Co v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991); *Kaiser v. Love*, 163 Tex. 558, 560, 358 S.W.2d 586 (1962).  It is evident that the transfer of an interest in oil and gas occurs both when a lease takes effect and when the leasehold interest reverts to the interest owner upon termination of the lease.

*Energetics, Ltd.*, 497 N.W.2d at 502 (footnotes omitted).  Significantly, the Supreme Court characterized the reversionary interest as a "leasehold" interest that reverts to the "interest owner," even though it cited Texas law which generally treats a lessee's interest as a fee.

Similarly, when confronted with the question of whether the rights of a lessee under a Michigan oil and gas lease qualify as a fee interest subject to a wife's claim of dower, the court concluded that such interests did not qualify as fee interests. The Supreme Court reasoned that a lessee under an oil and gas lease is "but a lessee for a determinable term and [is] not seised of an estate of inheritance" within the meaning of Michigan's dower statute. *Redman v. Shaw*, 1 N.W.2d 555, 556-57 (Mich. 1942). The high court's discussion of "seisen" as a condition of a freehold tenure, and its conclusion that an oil and gas lessee is not "seised" of any interest,[5] persuades the court that Michigan treats a lessee's interest as a leasehold or *profit á prendre,* but not a freehold estate. In this significant respect, Michigan departs from the law of Texas and several other oil and gas states that apparently regard a lessee's interest under an oil and gas lease as a freehold or fee.

At oral argument, Aurora argued, based on the U.S. Supreme Court's recent decision in *Hamilton v. Lanning*, __ U.S. __, __, 130 S. Ct. 2464, 2471 (2010), that "[w]hen terms used in a statute are undefined, we give them their ordinary meaning." *See* Transcript of Oral Argument Held July 28, 2010 at pp. 35-36 & 49 (DN 187). Although Section 365(m) does attempt to define the term "lease," the definition is somewhat circular, as Judge Wedoff has noted, because the term "rental agreement" is generally understood to mean "lease." *In re Resource Technology Corp.*, 254 B.R. 215, 225 (Bankr. N.D. Ill. 2000). Because, as the parties agree, the term "lease" as used in Section 365 is not fully defined, the court should consider its ordinary meaning. *Lanning*, 130 S. Ct. at 2451; *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982).

Judge Wedoff observed that a lease is commonly understood to mean:

---

[5] "Seisin" is defined as "[p]ossession of real property under claim of freehold estate." *In re Estate of Moukalled*, 714 N.W.2d 400, 406 (Mich. App. 2006) (*citing* Black's Law Dictionary (5th ed.)).

> [1] an agreement by the owner of property (the lessor) to allow exclusive possession of that property by another person (the lessee), [2] for a defined period of time, [3] in exchange for payment ("rent") by the lessee, [4] with the property reverting to the lessor at the end of the lessee's period of possession.

*Resource Technology Corp.*, 254 B.R. at 225-26 (citing Black's Law Dictionary 889 (6th ed. 1990)). The Agreements between Frontier and Aurora, though obviously touching the arcane area of oil and gas law, fall within this common understanding.

First, the Agreements recite, and no one appears to disagree, that prior to the execution of the Agreements Frontier was the owner of the subsurface mineral estate, and both Agreements plainly grant Aurora exclusive possession and control.

Second, the Agreements grant Aurora exclusive use for a defined period of time -- the initial term and thereafter so long as oil and gas are produced in "paying quantities." The fact that the duration may be difficult to ascertain does not disqualify Aurora's interest as a leasehold because "oil and gas cannot be produced forever . . ." *Redman*, 1 N.W.2d at 557. The term of each Agreement is indefinite but not perpetual.

Third, Frontier conveyed an interest to Aurora in exchange for consideration in the form of rents and royalty payments from Aurora. *Mobile Oil Corp. v. Michigan*, 328 N.W.2d 367, 371 (Mich. App. 1982) ("Royalty payments under an oil and gas lease are not payments for the purchase of the oil and gas produced . . . [but] payments for the privilege of exploiting the land which is the subject of the lease."). Royalties for oil and gas -- representing the fruits of the subsurface estate -- are akin to "rents and profits" in the parlance of the common law. They are equivalent to rent measured not by the acre (as during the primary term), but by the amount of oil or gas produced.

Fourth, at the termination of the Agreements, the interests conveyed to Aurora revert to Frontier.  Frontier will be free to re-lease its subsurface estate to another entity capable of extracting additional oil and gas, or perhaps other subterranean products like gravel or sand or other minerals.  This is a meaningful reversionary interest.

To reiterate, the property interests transferred under the Agreements are not interests in the oil and gas *per se* under Michigan law, but merely interests in the nature of a *profit á prendre* -- the right to extract oil and gas from Frontier's reversionary estate.  Under Michigan law, this is an interest in the real estate, though less than a fee interest. *VanAlstine*, 417 N.W.2d at 520 (*profit á prendre*); *Redman*, 1 N.W.2d at 557 (not a fee interest); *Jaenicke*, 287 N.W. at 303 (leasehold interest in real estate).

Judge Nims suggested, in *dicta*, that Section 365 may apply to unexpired oil and gas leases in Michigan.  *See In re P.I.N.E., Inc.*, 52 B.R. 463 (Bankr. W.D. Mich. 1985).  Opinions of other bankruptcy courts, whether *dicta* or not, are not binding on this court, yet the *dicta* from Judge Nims merits considerable respect and is certainly persuasive authority on the question before the court.  The court has considered the other arguments and authorities that Aurora advanced and finds them insufficiently persuasive.

Finally, treating the Agreements as unexpired leases makes sense when considering the purpose of Section 365, a statute designed to deal with transactions that are not fully executed when the petition is filed, and that in a practical sense straddle the petition date. Congress has expressed special solicitude for real estate transactions in the nature of unexpired leases, perceiving a need to balance the interests of the trustee or debtor-in-possession (who might wish to be relieved of burdensome and potentially long-term obligations) against the interests of non-debtor parties such as Frontier (who seek the benefit of their bargain -- either full payment with

continued possession in the estate, or a *pro rata* claim plus present enjoyment of the reversionary interest).

From its review of these and other Michigan authorities, the court concludes that oil and gas leases in Michigan, such as each of the Agreements under consideration, are "rental agreement[s] to use real property" and therefore "leases" within the meaning of Section 365. *See* 11 U.S.C. § 365(m).

### 2. "Executory Contract" Analysis

The court's conclusion that the Agreements qualify as "leases" within the meaning of Section 365 makes it unnecessary to consider whether the Agreements meet either the functional test or Countryman definition for executory contracts. *Compare Rieser v. Dayton Country Club (In re Magness)*, 972 F.2d 689, 694 (6th Cir. 1992) (Countryman definition is "helpful" but "not controlling") *with Terrell*, 892 F.2d at 471 (approving Countryman definition) *and Chattanooga Mem. Park v. Still (In re Jolly)*, 574 F.2d 349 (6th Cir. 1978) (adopting "functional" test). Given the confusion in the case law, it is also improvident to opine on the question.

### CONCLUSION AND ORDER

Each of the Agreements is a "rental agreement to use real property" because an oil and gas lessee's interest under Michigan law is a non-freehold interest in real property within the common understanding of the term "lease." Other courts, interpreting the laws of other states, have reached a contrary conclusion, but this disparity may be explained by our complex system of dual sovereigns, a system in which "the basic federal rule is that state law governs" unless a countervailing federal interest otherwise requires. *Butner*, 440 U.S. at 57; *see also River Prod.*

*Co. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 739-40 n.17 (5th Cir. 1990) (holding that trustee is not required to assume or reject Texas oil and gas leases but noting that result would be different in states where oil and gas leases constitute leasehold interests, rather than freehold interests).

Accordingly, each of the Agreements qualifies as an "unexpired lease" which Aurora must either assume or reject pursuant to Section 365.  Under Rule 54(b), however, this Opinion and Order does not end the litigation because difficult issues regarding the applicable cure payments remain for later decision.  Under the circumstances, the court will not require Aurora to make its decisions regarding assumption or rejection until this litigation concludes.

Nothing in this Opinion and Order shall be construed to abridge Frontier's rights under Section 365 and Rule 6006(b).

NOW, THEREFORE, IT IS HEREBY ORDERED that Frontier's Motion (DN 124) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Timothy A. Fusco, Esq., D. Andrew Portinga, Esq., Robert H. Skilton, Esq., Stephen B. Grow, Esq., Charles N. Ash, Jr., Esq., and Harold J. Martin, Esq.

[END OF ORDER]

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: August 13, 2010**